The next matter on calendar for argument is VIZIO, Inc. v. Arch Insurance, 22-55755. And each side has 15 minutes in this case. Good morning. Good morning, Your Honors. May it please the Court, my name is Gerard Mooney with Rattan & Tucker, and I am here on behalf of the appellant VIZIO, Inc. I'd like to reserve six minutes of my time for rebuttal, please. Good luck. Thank you, Your Honor. In sum, Arch's position in this case and the finding reached by the District Court was that where an insured under an excess policy provides timely notice of a claim in full conformity with the policy's notice provision, but such notice is sent before exhaustion, the excess insurer may fail to provide a coverage decision or honor its coverage obligations, and so long as the insured provides no secondary notice after exhaustion, then any and all of the excess insurer's obligations to the insured are completely excused. And in fact, Arch acknowledged it owed a coverage decision, and it even intended to give one as its claim file demonstrates, but it never did. That is not disputed. And now Arch asserts that doesn't matter, again, because VIZIO didn't send a second notice after exhaustion. There is no provision in Arch's policy which requires any such secondary post-notice, or excuse me, post-exhaustion notice. There's only one notice provision. Well, let me ask you this, though. Okay, VIZIO says Arch breached California Code of Regulations Section 2695.7b, which states that after an insurer received proof of a claim, it must accept or deny the claim within 40 days. Here, it appears VIZIO may have submitted notice of the claim, but never submitted proof of the claim. How do you get around that? Because proof of claim is a notice of a claim. No, they're not the same. Here, Your Honor, the proof of claim is the complaint, and the claim that is submitted is the fact that this action was filed and was pending. And that is what was submitted to Arch. And Arch's own policy, or excuse me, Arch's own claim file does not state that no proof of claim was provided. In fact, Arch responded by way of a letter stating, we've received your information, we will be reviewing, and we will be providing a determination of coverage. Okay, so let's say you get past that part of it. And they didn't deny coverage before you went to settlement, right? They had, in fact, internally denied coverage. But did they notify you that they, did you have? They didn't notify us, which in and of itself was a breach. So your point is that they never gave any coverage decision? That, to us, that is correct. Internally, they had decided that they were going to deny the claim. And in fact, there's repeated notice, or not notice, excuse me, mentions of denial in the claim file, but, and references to the fact that an excess insurance. But you don't know that, and you would be right to believe that the policy existed. You haven't been denied coverage. But you go to settlement, and if you look at your, that, if you look at your policy, your policy requires that you can't go into a settlement without notifying the excess, letting the excess cover, excess carrier be part of the settlement. And it seems undisputed here that VIZIO settled this case without notifying the excess carrier, and how do you get around that? Well, on a couple of bases. First of all, this matter was decided on the basis of a motion to dismiss. There are, there are factual issues that would have to be considered with regard to voluntary, whether it was a voluntary payment, whether the payment was, in fact, voluntary, isn't a factual issue as described and discussed in the Deeds v. Evanson case. But in addition, ARCH was already in breach of the policy for failing to have provided a coverage decision in a timely manner. Going back to that proof of claim versus notice of claim, the regulations provide different definitions for proof of claim versus notice of claim. Proof of claim, which is in CCR 2695.2S, says it's evidence of the claim that reasonably supports the magnitude of the amount of the claimed loss. And notice of claim is defined differently. So it seems like you provide the notice of claim, but not the proof of claim. Proof of claim, I think, is later when you say this is how much we suffered. And at that point, when you, when you submitted that email, I think in February 2021, you didn't know the proof of claim because all you did was provide we got sued. No settlement occurs. It seems like that California statute doesn't apply here. Well, Your Honor, it does apply because, well, let me back up. First of all, there's also 10 CCR 2695.5E, which states that upon receiving notice of claim, every insurer shall immediately, but in no event more than 15 calendar days later, do the following. Number three, begin any necessary investigation of the claim. That was not done. Well, they asked you for more information. There's only so much they can do. You're the, Vizio was the one who got sued. I mean, and they asked for updates and they didn't receive any updates. They really couldn't do any more analysis. Well, there actually was more analysis. They will, let me back up. First of all, they could have actually requested information regarding exhaustion. Remember, that is what this entire decision comes down to. Well, set that, set that aside for now on the exhaustion, on the district court's rationale for that. But I think the insurer asked for more information and Vizio never provided any updates. Vizio did respond to the only specific request that was made, which was to provide information regarding whether the primary policy had agreed to accept coverage. And that letter, Navigator's denial letter, was provided. Essentially, ARCH abandoned its insured. It did no investigation. It never responded, provided any substantive response to the notice. It provided no coverage decision. It didn't ask for any additional information. And to the extent ARCH now argues that it required some additional proof of claim or some additional information, it's litigation afterthought. Because looking at the claim file, it's clear ARCH made its determination to make a coverage decision and not provide coverage on the basis of what it had. Had ARCH actually sent a letter saying we are denying coverage, that would unquestionably have been an anticipatory breach of the policy. And Vizio could have taken affirmative action to protect its rights. Vizio could have provided more information. It could have provided information regarding the status of the case or whatever else Vizio, or excuse me, ARCH believed it needed. But ARCH never gave Vizio that opportunity. It simply- With the prior consent provision. And this case is a little unusual in that I understand there were five complaints or five amended complaints. Is that right? In this particular- the case today? Yes, Your Honor. Okay, so in the third one of those, the judge said in a footnote, an alternate basis for actually granting the motion is that the prior consent provision is enforceable. And that's consistent because at that point, you haven't alleged that there's an actual denial or abandonment or breach. So did anything change between that third amended complaint and the fifth amended complaint in terms of underlying facts that would implicate this alternative basis? We did, in fact, allege that there was a breach of the policy. And that is even before exhaustion. And the breach is precisely earlier to tell? Yes, it's paragraphs 18 at footnote 24, paragraph 25, and paragraph 33, which pertains to the obligations under the Fair Claims Settlement Practices Act. I would also note, Your Honors, you mentioned, well, what did Arch know? What did it not know? What information did Vizio provide? Those are also disputed factual issues alleged in the complaint regarding Arch's ability to obtain information, including direct emails it received on the status of the case, including the fact that the PACER file was available to the public and contained a plethora of information about the status of the case. Arch had access to all of that information, which is a factual issue that cannot be decided in the context of a motion to dismiss. But I guess what troubles me just as a practical matter, if you've got these policies, we know what the primary policy says about pre-approval and consent in terms of settlement. They go ahead and they settle, and now you're saying, well, that didn't apply? And that's where I'm having trouble understanding, well, why wouldn't that apply? And if you're in the settlement posture and you're lining up all the insurance policies as a practical matter, you could say, well, maybe it doesn't apply, maybe it does. I just can't understand how they would have gone ahead and settled without notification. Because at the point that the settlement was reached, was being negotiated, Arch had long since breached the policy and abandoned its insured. No notice of coverage, or excuse me, no notice of a coverage decision, no determination, no statement to VIZIO as to what action it was going to take or should take. And once that breach occurs, the no voluntary payments provision is no longer enforceable. And again, yes. Your argument would have more force if you had repeatedly asked Arch for a coverage determination and Arch just didn't respond. Here, it's not the case. It looks like maybe someone dropped the ball at Arch, but it was just one instance, right? There was one notice of claim given, but again, Your Honor, that's the only notice that VIZIO is required to give under the terms of the policy. If Arch wanted to require additional notices from VIZIO, it should have said so in its policy. It didn't. Arch is bound by the terms of its policy, and that policy states, provide us notice. In fact, it says provide us notice of a claim or a potential claim. Well, I'm kind of, I'm baffled like Judge McEwen in the sense that having done settlement conferences, you want to know what your pool of money is there. And that's exactly what judges do when, you know, or if you're involved in a settlement, and if you have $10 million on the first one, $5 million on the excess, you'd be talking about why, where's the excess? But you went ahead. You don't push that point. And, you know, maybe you made a calculated risk to decide, well, I'd rather try to get them for bad faith, and maybe they're not, you know, and maybe we can do that down the line. But VIZIO said, I'll pay the $7 million, right? And so then we'll go after Arch later for the $5. And there was an agreement reached with CHUBB, and this is part of the record, to assign the claim for equitable contribution with regard to other insurers, including Arch. But equitable contribution only applies to insurers that are in a similar position, not different tiers. And an excess is not the same as a primary. There is no law in California that limits an equitable contribution claim against an excess insurer whose underlying policy has been exhausted. The exhaustion of that- Well, what about reliance national indemnity? It appears that a general rule in California is there's no contribution between a primary and an excess. The reliance case actually involved multiple insurers, each of whom had a no, or excuse me, other coverage or other insurance clause. And so that was a battle over who was excess to who or whom. Okay. So we're taking up all your time here. If my colleagues have any questions, otherwise we'll reserve the balance. And if we need a little more for your rebuttal, we'll add that. But you're at 1.51 left. We're all past the six minutes. So any questions? Okay. Thank you. We'll hear from the other side, and then I'll decide how much you get for rebuttal. Thank you, Your Honor. Thank you. Good morning. Good morning, Your Honors. Eileen Ridley, Foley & Lerner on behalf of ARCH. May it please the Court. Your Honors, I will address what was discussed during the oral argument by my colleague. There was no breach here. The original notice was just that. It was not a proof of loss. And importantly, what ARCH's communication said was, we're investigating, please provide us with a status. You have an ongoing obligation to inform us as to what's going on. Importantly, that communication was in June. They settled a year after, in September of 2017. There was no communication whatsoever from the insured to ARCH regarding any of the activity that went on. They didn't tender the 14 additional complaints that were involved. They didn't tell us there was even a schedule for mediation. They didn't tell us there was any discussion with regard to settlement. There was literally nothing. In fact, the last- Well, the fact that you, ARCH, internally denied coverage but never told the other side, those sort of things don't make insurance companies look very good. Understood, Your Honor. But nevertheless, the last- And they were investigating it like they did assign it to several people. And so it looked like something was going on. And then they denied it internally, and they never told VIZIO. Understood, but at the same time, they didn't take a position which would indicate to VIZIO that they could still seek information. And keep in mind, VIZIO's last communication to ARCH was that the underlying insurance to ARCH had denied coverage. ARCH is an excess following form. If the underlying insurance is denying coverage, it is logical there would not be coverage for the excess. If there was a change of position with regard to that coverage position by navigators, or if navigators had agreed to participate in settlement, that would have been a material change in information that would be further investigated by ARCH. That was never communicated to ARCH whatsoever. So if you jump ahead to the notification, the consent and notification requirement, their argument, as I understand it, is, well, you can't really invoke that because there was a breach. And the only breach I heard was, well, you didn't tell us. And by not telling us, you're in breach of certain statutory obligations. So I'd appreciate your comment on that. We don't believe there was a breach. There was no obligation yet to the excess because there had been no exhaustion to the insured. The original notice was responded to, an investigation was begun, information was requested, and the insured was notified that there was an obligation to continue to provide status. The one information that was received from the insured was that the underlying insurance had denied coverage. Again, we're excess following form. That would indicate our duty had not arisen whatsoever. So why don't you just send them something within the 40 days? I agree, Your Honor. I would prefer if there was a letter having said that. Yes. If they were asking you. I agree. But the fact that there isn't is not a breach. It certainly would be nice, neat, and have a boat. But it's still not a breach because the underlying policy, according to the insured, had denied coverage. Therefore, there was no duty on the excess. Importantly, either it was a strategic decision or somebody didn't follow all the way through, but it was a full year afterwards that they go through all of this litigation, 14 suits not tendered, by the way, to ARCH, and they go through all of the machinations. They have a ton of communication with navigators. Nothing to ARCH. So let's just, this is hypothetical, but let's just assume that if we said you breached, I'm saying that hypothetically, but then if ARCH, does ARCH become a primary insurer once the primary insurer's limit is exhausted under insurance law? Because I went over the equitable contribution, and I know both of you just live insurance. But for those of us that don't live, breathe, and just can't wait for the next insurance case, I cited reliance. But then if, but let's just say, hypothetically, we got in that position where the primary is exhausted. Do you then become primary? No. What happens is if the primary is exhausted, we are still always excess, but we, our obligations are then triggered. And that's what it means. The language that's being referred to is once the primary is exhausted, our obligations are triggered, and we now have to respond to the claim of the case. Okay. Once they're triggered, can you ever, as an excess carrier, if that were to occur, hypothetically, can you still be asked for equitable contribution at that point? I know that's a lot of ifs along the way. The answer, there are a lot of ifs along the way. Yes, I know that. There can be equitable contribution between two excess carriers, certainly, but not between a primary and an excess. They just are not on the same level. And under California law, and I would include not only reliance, but fireman's fund and signal, because they're not on the same level, there is no right to contribution. I'll also note specifically on this policy, ARCH was directly over navigators specifically identified and said that it would have to be navigators that would have expended, not CHUB. All right? And so there's a distinction there. CHUB and ARCH are totally different levels of insurance. So the reason you have in an excess carrier policy that you have to be notified of a settlement is, if you're going to be triggered by exhaustion, you want to at least be at the table to negotiate what the total settlement is, because I guess hypothetically we could say here it was $17 million and Vizio was on the hook for $7 million. But say if you'd been there and you're negotiating, maybe you could make it $13 million, and then that would only be three of your excess coverage as opposed to five. Is that why you have that? That is exactly why we have that. And also, if there's other excess insurance, there might be contributions from those excess insurers in those instances. So it is an issue with regard to the rights related to not only how much might be paid, but the whole contributory landscape. I think the only other thing I read that was raised in defense of the consent provision was the claim that I think Vizio makes that the duty of the insured under the excess policy, that's the ARCH policy, is somehow in conflict with the primary coverage. And would you respond to that argument? There's no conflict whatsoever. We are literally following form. So the duties are, frankly, completely aligned. I say that the duties in the event of a claim under the ARCH policy are different, or they're not 100% the same in terms of notification. So therefore, the other policy, the primary policy, doesn't flow down as it normally would in an excess coverage. I don't think that's correct. I mean, there's a difference with regard to the primary and the excess because the primary, frankly, has a duty to defend. And therefore, the notice is immediate and their obligation becomes immediate if there's potential coverage. That's not true with regard to any excess as a general matter. But the notice provided to the primary is not in conflict with the notice required of ARCH and its policy here. And particularly, if the insured had reason to believe that either, for example, the denial of navigators was inappropriate, it should have informed ARCH of that and expressed its position. If navigators had changed its position, it should have informed ARCH of that. Okay, so what is the reason that you denied coverage internally? Because the underlying insurance was not exhausted and had apparently denied coverage. We're following form. The denial would follow that form. Okay. So ultimately, what is... Is there a letter in the record to that effect? Excuse me? Is there a letter in the record to that effect? There is not a letter in the record to that effect. That is the analysis under what is in the record, which is a following form that, in fact, Vizio had provided ARCH with the March 2016 denial by navigators. ARCH had asked for any updates and any information with regard to the status of the case. Received none. The case proceeded. Fourteen other cases got filed. Never provided to ARCH. Lengthy litigation and discussion with regard to settlement. No notice to ARCH whatsoever. If the court... We don't have questions, but if you... But it's your time. I'm not going to tell you how to use it. I appreciate that, Your Honor. Unless the court has additional questions, I think I've addressed the issues I wanted to address. Thank you. Thank you, Your Honors. Okay, I'll give you three minutes for rebuttal. There are a few points I think it's important to review. First of which is exhaustion of the underlying limit is not only payment by navigators. It's also payment by the insured. That is a defined term and provision of the ARCH policy. So Vizio paying $5 million and more is also exhaustion under the policy. But it wouldn't be... But the navigator policy was 10, right? And navigator paid 10. The underlying limit was $5 million. And that was exhausted. And in fact, Judge Wright... Okay, so navigator wasn't 10. It was 5? The underlying limit was $5 million, I believe, Your Honor. And in fact, Judge Wright found that exhaustion was sufficiently alleged in the complaint. So that issue isn't really before this court. In addition, there is nothing in the internal claim file notes about exhaustion. That was not a basis for denial. At the very least, that is a factual issue which would have to be determined and can't be decided in this context. Well, did you initially tell ARCH that Navigator was denying coverage? ARCH requested a notice... Or excuse me, a copy of the response provided by the primary insurer, which was Navigator's. And yes, it was provided to ARCH. Okay, so if Navigator denied coverage and that stuck, how would the excess come into effect? Well, because just relying on the fact that the primary denied coverage, that's not a sufficient basis for the excess to deny coverage. Navigators could be wrong. And ARCH did no internal investigation or analysis to determine whether it was right or wrong. Did you ever notify ARCH? It could be wrong, but right or wrong, ARCH doesn't kick in until that coverage is paid, correct? No, actually ARCH kicks in even if the payment is made by the insured. Right. And here, that's what was done. But that's a settlement and that puts you back into the consent plan. In fact, it also counts as to cost of defense. And here, it was more than $5 million in cost of defense. I'll also note just finally, with regard to the issue of proof of claim, that's defined not only as information submitted by the claimant, it also says, or obtained by the insurer in the course of its investigation. And here, ARCH breached its duty to conduct an investigation. Had it done so, it would have determined what the magnitude of the claims were. And with regard to the statement that only two lawsuits were submitted, the other 14 weren't, these are related claims. It's all the same litigation  We have here a situation with an insurer that engaged in multiple breaches. It essentially turtled. It ignored its insured. And now it is coming to the court and stating that it should have no obligations to its insured because it simply disappeared. That is not the law. It most definitely should not be the law to allow this carrier to skate on its obligations simply because it didn't respond to a notice where there is no additional notice requirement by the insured. Alright, your time has expired. Thank you both for your argument in this matter. This case will stand submitted.
judges: McKEOWN, CALLAHAN, LEE